IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

---

B.E. TECHNOLOGY, LLC,          )
                               )
    Plaintiff,             )
                               )
v.                             )          No.: 2:12-cv-02782-JPM-cgc
                               )
PANDORA MEDIA, INC.,           )
                               )
    Defendant.             )

---

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**

---

    Before the Court is Defendant Pandora Media, Inc.'s ("Defendant" or "Pandora") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed December 26, 2012. (ECF No. 19.) For the reasons that follow, the Motion is DENIED.

**I. BACKGROUND**

    This case concerns Defendant Pandora's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E."), is the assignee of the '314 patent (ECF No. 27 at 2), currently owning "all right, title, and interest in the '314 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement (ECF No. 1 ¶ 10).

    B.E. alleges that Pandora infringed the '314 patent "by using a method of providing demographically targeted advertising that directly infringes at least Claim 11 of the '314 patent

either literally or under the doctrine of equivalents." (Id. ¶ 11.)

B.E. filed a Complaint in this Court on September 10, 2012. (ECF No. 1.)  Pandora filed its Motion to Transfer Venue on December 26, 2012 (ECF No. 19), and filed its Answer to the Complaint on December 31, 2012 (ECF No. 20).  B.E. filed its Response in Opposition to Defendant's Motion to Transfer Venue on January 14, 2013.  (ECF No. 27.)  With leave of Court, Pandora filed a Reply Memorandum in Support of Its Motion to Transfer on February 1, 2013.  (ECF No. 33.)  On February 8, 2013, Pandora filed a Motion to Stay pending resolution of its Motion to Transfer Venue.  (ECF No. 35.)  The Court granted Pandora's Motion to Stay on February 8, 2013.  (ECF No. 36.)

Pandora seeks to transfer this case to the Northern District of California, where its headquarters are located. (ECF No. 19-1 at 1.)  To support its Motion, Pandora contends that all products and services of which it is alleged to have infringed were developed and have been operated from the Northern District of California.  (Id.)  Pandora states that its "management, along with it primary research, development, and engineering facilities, are located in the Northern District of California," and that "the vast majority of Pandora's potentially relevant defense witnesses and evidence related to the research, design, and development of the accused

2

applications, including those whom Pandora anticipates including in its initial disclosure, are located within" the transferee district, as well.  (Id. at 3-4.)  Further, Pandora asserts that a majority of third-party witnesses on whom it intends to rely are also located in the Northern District of California.  (Id. at 1.)

B.E. opposes Pandora's Motion to Transfer.  B.E. is a limited liability company incorporated in Delaware.  (ECF No. 1 ¶ 2.)  B.E. was originally registered in Michigan, but formally registered to conduct business in Tennessee in September 2012. (ECF No. 27 at 2.)  B.E. contends that Memphis, Tennessee, is its principal place of business.  (ECF No. 1 ¶ 2.)  Martin David Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor of the '314 patent.  (ECF No. 27 at 1, 2.)  Hoyle has been a resident of Tennessee since April, 2006.  (Id. at 1, 2.)

B.E. argues that transfer is inappropriate because it has substantial connections with this district.  B.E. argues that Hoyle has been "present in this District since 2006, and B.E. since at least 2008," and this district is B.E.'s principal place of business.  (Id. at 4-5.)  B.E. also argues that none of its witnesses are located in the Northern District of California.  (Id. at 7.)  Further, B.E. argues that its corporate documents, including documents relating to the

"conception and reduction to practice" of the patent-in-suit, are located in this District. (Id. at 4, 5, 7.)

## II. STANDARD

Pandora moves the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (ECF No. 19-1 at 1.) The statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." Reese v. CNH Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a), the court must first determine whether the claim could have been brought in the transferee district. 28 U.S.C. § 1404(a) (allowing transfer to any other district in which the claim "might have been brought"). Once the court has made this threshold determination, the court must then determine whether party and witness "convenience" and "the interest of justice" favor transfer to the proposed transferee district. Reese, 574 F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted

4

2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine."  Norwood v. Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); Esperson, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  Moore v. Rohm & Haas Co., 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

> interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering additional factors such as the relative docket congestion of each district).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer. (ECF No. 27 at 4-6.) B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93

(N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994). Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference.  Discussing the difference between the common-law doctrine of forum non conveniens and the federal transfer-of-venue statute in Norwood, the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . . [W]e believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience.  This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d 680, 685 (6th Cir. 1958) ("The choice of the forum by the petitioner is no longer as dominant a factor as it was prior to the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL 4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a change of venue to the transferee district is warranted.  See Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.

7

Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138 F.R.D. at 93. "Merely shifting the inconvenience from one party to another does not meet Defendant's burden." McFadgon v. Fresh Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn. Oct. 21, 2005). "[T]he movant must show that the forum to which he desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice." Roberts Metals, Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal quotation marks omitted). If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

Pandora asserts that B.E. could have brought this action in the Northern District of California. (See ECF No. 19-1 at 8.) B.E. does not dispute this assertion. (See ECF No. 27 at 4.) The Court agrees with the parties that B.E. could have brought suit in the Northern District of California as personal jurisdiction over Pandora exists in that district. Therefore, the only issue remaining is whether the balance of the statutory factors — the convenience to the witnesses, the convenience to

the parties, and the interest of justice — favors transfer to the Northern District of California.  The Court will address each statutory factor separately and balance these factors to determine whether transfer to the Northern District of California is proper pursuant to § 1404(a).

### A.   Convenience of the Witnesses

When asserting that a transferee district is more convenient for witnesses, a party "must produce evidence regarding the precise details of the inconvenience" of the forum chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93).  Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience."  Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *3 (W.D. Mich. May 18, 2011) (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the

"materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  Rinks, 2011 WL 691242, at *3.

Pandora contends that witness convenience favors transfer to the Northern District of California.  (ECF No. 33 at 3-6.) To support this contention, Pandora asserts that a majority of the witnesses on which it intends to rely are located in that district.  These witnesses include at least five material witnesses who are Pandora employees and at least five non-party witnesses.

In response, B.E. argues that "transfer to the Northern District of California would be equally inconvenient to B.E.'s witnesses, none of whom is located in the Northern District of California."  (ECF No. 27 at 7.)  B.E. identifies Hoyle, the named-inventor of the patent-in-suit and founder and CEO of B.E., as its key witness who is located in the Western District of Tennessee.  (Id. at 5, 7-8.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party

10

witnesses will appear voluntarily in either jurisdiction, but
non-party witnesses, with no vested stake in the litigation, may
not.").

### 1.  Party Witnesses

Pandora asserts that "the key witnesses in this case . . .
will be Pandora employees at Pandora's offices in Oakland[,
California,] who were responsible for the design and development
of the accused applications."  (ECF No. 19-1 at 10.)  In its
Reply, Pandora specifically lists five employees that "might
testify at trial" because of their knowledge of Pandora's
operations.  (ECF No. 33 at 6; Morgan Decl., ECF No. 33-1, ¶ 3.)
Pandora further states that "other Pandora executives, engineers
and employees in the Oakland area also could testify on behalf
of Pandora."  (ECF No. 37 at 6.)

Pandora does not provide any evidence showing that any
employees will be unwilling to testify in this district if asked
to do so, though it has indicated that Pandora would be
inconvenienced by their absence.  See Esperson, 2010 WL 4362794,
at *8.  Nevertheless, courts have noted that "normally a
corporation is able to make its employees available to testify
when needed."  Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001
U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see
also Zimmer Enters. v. Atlandia Imps., Inc., 478 F. Supp. 2d
983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience

of witnesses who are employees "will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given to other witnesses"). Accordingly, it appears that Pandora's employees will be able to attend absent any evidence to the contrary.

Therefore, regarding Pandora employees, Pandora cannot satisfy its burden. Pandora argues that due to the distance between Memphis and the Northern District of California, approximately 1800 miles, travel to Memphis "would impose a significant inconvenience." (ECF No. 19-1 at 10-11.) Yet, the same is true for B.E.'s witnesses, which B.E. asserts do not reside in the Northern District of California. (ECF No. 27 at 7.) Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Pandora further argues that because it intends to call multiple witnesses located in the Northern District of California, and because B.E. only identified one witness, Hoyle, this factor weighs in favor of transfer. (ECF No. 33 at 4.) With respect to the material witnesses, Pandora does

12

specifically list five employees who "might testify at a trial
on behalf of Pandora because they are knowledgeable about
Pandora and its operations." (ECF No. 33 at 6; Morgan Decl.,
ECF No. 33-1 ¶ 3.) Although this assertion is imprecise as to
the materiality of the testimony of the named individuals, and
whether they are sure to testify, it is not asserted that their
testimony will not be relevant and material in this case.
Pandora's general statement, however, that it believes "other
Pandora executives, engineers and employees" in the transferee
district would be material witnesses (see ECF No. 33 at 6), does
not aid the court in assessing (1) what the testimony of such
additional material witnesses will be; (2) whether such
witnesses will be unable to attend; or (3) whether and to what
extent such witnesses will be inconvenienced by testifying in
this district. Pandora cannot rely on such "bare allegations"
to satisfy its burden. Esperson, 2010 WL 4362794, at *8.
Pandora, therefore, has only identified five material witnesses
on whom it intends to rely for purposes of transfer under
§ 1404(a).

While B.E. did not specifically identify any witnesses
beyond Hoyle, B.E. does not have the burden to do so. Despite
B.E. not identifying any individuals beyond Hoyle, Pandora's
identification of five material witnesses who are Pandora
employees and may testify does not satisfy its burden on this

13

factor.  A simple numerical advantage is insufficient on the issues raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Pandora's California-based employees will be deposed in California where B.E.'s lead counsel is based." (ECF No. 27 at 10.)  This further indicates that the witness-convenience factor does not weigh in favor of transfer.  See Hunter Fan, 2006 WL 1627746, at *2 (finding relevant that the plaintiff planned to take depositions of the defendant's witnesses in California in determining that the witness convenience factor did not favor transfer).

### 2.    Non-Party Witnesses

While convenience to party witnesses is an important consideration, "it is the convenience of non-party witnesses, rather than employee witnesses . . . that is the more important factor and is accorded greater weight." Steelcase Inc. v. Smart Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004) (citation omitted) (internal quotation marks omitted).  Pandora asserts that it intends to rely on non-party witnesses who have knowledge about five prior-art patents related to the patent-in-suit.  (ECF No. 19-1 at 5-6; ECF No. 33 at 6-7.)  Pandora states that "the inventors and assignees identified on the face of these patents are potential witnesses to be deposed or called to testify at trial by Pandora, and the relevant documents in their

14

possession may also be required for this litigation." (ECF No. 22-1 at 5.) Pandora further contends that many of these witnesses are located in California, including the transferee district. (Id.) To support its contention, Pandora cites the locations of the inventors and assignees as indicated on their respective patents. (Id. at 5-6; ECF No. 19-8.) Pandora also indicates another potential third-party witness, the attorney who filed and prosecuted the '314 Patent, is located in Troy, Michigan. (ECF No. 19-1 at 6.) Pandora claims that it will not be able to compel these witnesses to testify at trial if the case remains in Tennessee, but will be able to compel the prior-art witnesses to testify at trial in the Northern District of California, and that the "relative cost of obtaining the attendance of a willing non-party witness will be comparatively lower in California than in" the transferor district. (ECF No. 19-1 at 9.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Pandora has not established that the "third party testimony will be material or important." (ECF No. 27 at 10.) B.E. argues that Pandora has not stated the "relevance, materiality, and importance" of the non-party witnesses' testimony "who allegedly could not be subpoenaed." (Id. at 11-12.) B.E. further argues that prior-art testimony is "almost certain to be severely

15

limited by the time of trial" and, therefore, such testimony does not weigh in favor of transfer.  (Id. at 10-11.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the Northern District of California would be able to compel the prior-art witnesses to testify at trial.  See Fed. R. Civ. P. 45(b)(2).  In contrast, the prior-art witnesses would not be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this district.  Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive."  Rinks, 2011 WL 691242, at *4.

Pandora, however, has not disclosed the particulars of the testimony of the potential non-party witnesses, nor why depositions of non-party witnesses would be inadequate and live testimony from non-party witnesses required.  To the extent the non-party witnesses' testimony may be presented by deposition,

witness inconvenience would not be an issue.  Pandora merely states that the named prior-art witnesses are "potentially critical to the claims and defenses in this case."  (ECF No. 19-1 at 9.)  This general statement is not sufficient to allow the Court to determine whether live testimony of Pandora's non-party witnesses is necessary.  Further, Pandora does not state whether it is aware that any of the non-party witnesses would be unwilling to testify in this district if asked to do so.  As a result, this factor does not weigh in favor of transfer.

**B.   Convenience of the Parties**

Pandora argues that the Northern District of California is "clearly more convenient for the parties."  (ECF No. 19-1 at 1.) While Pandora organizes its arguments somewhat differently than the Court, the Court finds the considerations relevant to the convenience-of-the-parties factor are the location of the sources of proof and the parties' financial hardships due to litigation in the chosen forum.

**1.   Location of Sources of Proof**

Pandora argues that "most, if not all, Pandora documents related to the research, design, and development of Pandora's Internet radio services are located in the Northern District of California."  (ECF No. 19-1 at 8.)  As a result, Pandora contends that the "vast majority of the physical and documentary evidence relevant to the issues of Pandora's alleged

infringement, invalidity, and damages" is also located in the transferee district. (Id. at 9.) Pandora contends that the volume of these documents "vastly exceeds the volume of documents in Tennessee." (ECF No. 33 at 7.)

B.E. argues that, because its CEO resides in the Western District of Tennessee, its corporate documents and records, "including documents demonstrating the conception and reduction to practice of [the patent-in-suit]," are located in the Western District of Tennessee. (ECF No. 27 at 5.) B.E. notes that while Pandora's sources of proof are located in the Northern District of California, B.E.'s own sources of proof are located in Tennessee and have been maintained there for years. (Id. at 12.) B.E. also contends that "the location of relevant documentary evidence is increasingly less important in deciding motions to transfer," and that because documents can be exchanged electronically the weight given this factor should be minimal. (Id. at 13.) B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Pandora will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (Id.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor. This notion has been expressly rejected by the Federal Circuit. See,

18

e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224
(Fed. Cir. 2011) (reversing a district court that did not
consider the factor, stating, "While advances in technology may
alter the weight given to these factors, it is improper to
ignore them entirely"); In re Genentech, Inc., 566 F.3d 1338,
1345-46 (Fed. Cir. 2009) (finding clear error where a district
court "minimized the inconvenience of requiring the petitioners
to transport their documents by noting that '[t]he notion that
the physical location of some relevant documents should play a
substantial role in the venue analysis is somewhat antiquated in
the era of electronic storage and transmission'" (quoting
Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp.
2d 769, 777 (E.D. Tex. 2009))).

　　　The Court agrees that it is likely that the sheer volume of
documents Pandora has in its possession outnumbers the patent-
related documents in B.E.'s possession, but the Court disagrees
that this is enough to tip the balance in favor of transfer.
The Court finds that both parties maintain documents in their
respective districts; that both sets of documents will be
integral to the proceedings; and that Pandora will be expected
to serve its documents on B.E.'s counsel in Northern California,
not in the Western District of Tennessee (see ECF No. 27 at 13).
Pandora's reliance on L&P Property Management Co. v. JTMD, LLC,
No. 06-13311, 2007 WL 295027 (E.D. Mich. Jan. 29, 2007), is

misplaced.  (See ECF No. 19-1 at 9.)  In that case the court
found there were no relevant documents in the transferor
district, therefore transfer was appropriate.  See L&P Prop.
Mgmt. Co., 2007 295027, at *4.  In the instant case, B.E. has
shown that relevant documents are located in Tennessee.  Taken
together, the aforementioned facts indicate that as to the
location of the sources of proof, the Northern District of
California is a somewhat more convenient venue for the parties
to the instant case.  This factor, however, is not sufficient,
by itself, to require transfer.

### 2.  Financial Hardships Attendant to Litigating in the Chosen Forum

Pandora argues that its potential witnesses work in the
Northern District of California and none are located in the
Western District of Tennessee.  (ECF No. 19-1 at 10-11.)  As a
result, Pandora contends that travel to Tennessee would "impose
a significant inconvenience," and as the likely trial witnesses
are "vital to Pandora's business operations," their absence
"would adversely affect Pandora."  (Id. at 11.)  In contrast,
Pandora argues that "any inconvenience in asking B.E.'s sole
known employee, who is also an interested party and the named
inventor, to travel to California will not offset the
interruption in Pandora's business operations caused by taking

several Pandora employees from their jobs to testify in
Tennessee." (Id.)

B.E. states that it "would face a financial burden by
having to litigate in the Northern District of California."
(ECF No. 27 at 14.) B.E.'s CEO Hoyle states that "B.E. will
incur expenses it will not incur if the case remains in
Memphis." (Hoyle Decl., ECF No. 27-1, ¶ 9.) B.E. also states
that "[i]t is reasonable to require companies with the wealth of
Pandora to litigate in jurisdictions in which they regularly
conduct business." (ECF No. 27 at 7.)

The Court has considered "the relative ability of litigants
to bear expenses in any particular forum" among the factors in a
§ 1404(a) case. Ellipsis, Inc. v. Colorworks, Inc., 329 F.
Supp. 2d 962, 970 (W.D. Tenn. 2004). In the instant case,
B.E.'s CEO stated that the company will incur additional
expenses, but it has not shown with any specificity how
detrimental those expenses would be to the company. Further,
while Hoyle stated that his personal financial status would be
adversely affected by litigating in the Northern District of
California, he did not state why or how his personal finances
would impact B.E., the party to the instant case. (See Hoyle
Decl., ECF No. 27-1, ¶ 9.) B.E. has shown that Pandora has the
ability to bear expenses in this forum (see ECF No. 27-3), but
the Court does not find this to be a dispositive factor in

denying Pandora's Motion.  But see Siteworks Solutions, LLC v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D. Tenn. Sept. 22, 2008) (finding the relative financial strengths of the parties did not weigh in favor of transferring the case, as the party opposed to transfer showed it "ha[d] no net worth, very little revenue, no gross profits, no assets, and [would have to] borrow from its owners in order to pay the litigation expenses").  The Court finds that the evidence presented is insufficient to make a showing that B.E. or Pandora will be adversely affected by litigating in either forum.  The paramount consideration remains whether the Northern District of California is more convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer.  While Pandora has made a showing that its business would be disrupted by the absence of its proposed witnesses, B.E. has made an equal showing that its business would be disrupted in having to prosecute the instant case in California.  Pandora has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both parties.  As a result, the hardship to Pandora does not indicate transfer is more convenient.

### C.    Interests of Justice

Pandora argues that transfer to the Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor.  (ECF No. 19-1 at 12-17; ECF No. 33 at 9.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1. In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1.    Trial Efficiency

Pandora argues that while the Western District of Tennessee "has a shorter median time from filing to trial, and fewer intellectual property cases, . . . the average docket of pending cases per judge [is] higher" in the Western District of Tennessee than in the Northern District of California.  (ECF No. 33 at 9.)  Pandora admits, however, that in general this factor is neutral because the Western District of Tennessee has established local patent rules and the statistics of each district are negligible to the determination of convenience. (Id.)

B.E. argues that transfer to the Northern District of California "would likely delay trial of this case by at least one year."  (ECF No. 27 at 15.)  B.E. cites the 2011 Federal

Court Management Statistics for both districts to illustrate that the median time from filing to trial in the Northern District of California was 35.4 months, while the median time from filing to trial in the Western District of Tennessee was 20.8 months.  (Id. (citing ECF No. 27-4).)

The Court agrees with Pandora and finds this factor neutral to its determination of whether the Northern District of California is the more convenient forum.

### 2.  Local Interest

Pandora argues that the Northern District of California has strong local ties to the instant case because Pandora is located there, the sources of proof are located there, and the alleged infringement took place there.  (ECF No. 19-1 at 13.)  Pandora also asserts that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation.  (Id.)  Pandora also argues that the Northern District of California has a local interest because "the conduct of companies, employees and third parties within the district has been asserted to give rise to liability."  (Id.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here.  (ECF No. 27 at 15.)  B.E. also asserts that its ties to Tennessee are not

"recent, ephemeral, or manufactured for the purposes of litigation." (Id.)  Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E's principal place of business, and that the sources of proof pertinent to the instant case are located in the district. (Hoyle Decl., ECF No. 27-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer.  While Pandora has strong local ties to the Northern District of California, the Court finds that B.E.'s connection to the Western District of Tennessee was not manufactured for the purposes of litigation.  B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the district for seven years.  B.E.'s connections, therefore, are neither "recent" nor "ephemeral."  As a result, Pandora has not demonstrated that the Northern District of California's local interest outweighs that of the Western District of Tennessee.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Pandora has not demonstrated that the Northern District of California is a more convenient forum than the Western District of Tennessee.  Therefore, Pandora's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 8, 2013, stay of all proceedings.  (ECF No. 36.)  Regarding the Court's

February 12, 2013, Order granting Defendant's Motion for Extension of Time to File a Response to Plaintiff's Motion to Strike Defenses (ECF No. 37), Defendant shall have fourteen (14) days from the date of entry of this Order, up to and including July 26, 2013, to file its Response.

**IT IS SO ORDERED** this 12th day of July, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE